**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MARVIN JOE**                                                    **PLAINTIFF**

**V.**                                    **4:21CV00286**

**UNION PACIFIC RAILROAD**                                        **DEFENDANT**

## ORDER

Plaintiff was a locomotive engineer for Defendant Union Pacific ("UP"). According to the Complaint, he was stationed out of UP's Little Rock service unit and he regularly transported freight trains to and from the Little Rock region. On June 29, 2019, UP assigned Plaintiff to transport trains between Pine Bluff, Arkansas and Longview, Texas. As is often the case, Plaintiff reported to the Little Rock terminal and was shuttled by UP from Little Rock to the Pine Bluff terminal for the assignment. Plaintiff boarded the UP train in Pine Bluff. Plaintiff and his crew disembarked from the train in Texarkana, Arkansas early on June 30, 2019 for a mandatory rest period imposed by the Federal Railroad Administration. UP provided a van and driver to transport Plaintiff to a hotel. While driving near Texarkana, Texas, the van driver entered the wrong direction of a divided highway and collided head-on with another vehicle. Plaintiff was transported to a local emergency room for treatment for injuries sustained in the accident. Plaintiff received extensive treatment for these injuries in the Little Rock area.

Plaintiff filed suit against UP under the Federal Employers' Liability Act ("FELA") in this Court on April 12, 2021. Plaintiff served UP through its registered agent located in Little Rock, Arkansas. Plaintiff alleges that his injuries were caused by UP's negligence when:

(a) it failed to provide Plaintiff with a reasonably safe place to work;

(b) it failed to provide Plaintiff with reasonably safe conditions to work;

(c) it failed to provide Plaintiff with reasonably safe equipment and vehicles;

(d) it failed to operate its transport vehicle in a reasonably safe manner;

(e) it failed to keep a careful and proper lookout for other vehicles;

(f) it failed to keep its vehicle under control;

(g) it failed to operate its vehicle while exercising the appropriate degree of care;

(h) it failed to operate its vehicle on the correct side of the roadway;

(i) it failed to avoid collision with another vehicle by swerving or pulling to the side of the roadway;

(j) it failed to yield to oncoming traffic;

(k) it failed to properly coordinate and communicate a safe pick up and drop off of railroad employees so as to avoid unnecessary alterations in route; and

(k) it improperly retained an unqualified driver in Arkansas, failed to ensure the driver received adequate training, and improperly assigned that driver to transport its employees to and/or from the State of Arkansas.

(Comp., ECF No. 1 at 2-3).

UP filed a motion to dismiss alleging that the Court does not have personal jurisdiction over UP and should be dismissed pursuant to Rule 12(b)(2). UP further alleges that venue is improper, and the Complaint should be dismissed pursuant to Rule 12(b)(3).

## I.      Standard to be applied to a Rule 12(b)(2) analysis

Rule 12(b)(2) provides an avenue for dismissal where a federal court does not have personal jurisdiction over a defendant. When personal jurisdiction is challenged or controverted in federal court, a plaintiff has the burden to show jurisdiction exists. *See Denver v. Hentzen*

*Coatings, Inc*., 380 F.3d 1070, 1072–73 (8th Cir. 2004) (internal citation omitted). Specifically, a plaintiff must make a prima facie showing that personal jurisdiction exists, which requires creating "a reasonable inference that the defendant can be subjected to jurisdiction within the state*." K-V Pharm. Co. v. J. Uriach & CIA, S.A*., 648 F.3d 588, 592 (8th Cir. 2011). Although "[t]he evidentiary showing required at the prima facie stage is minimal, the "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion. *Id.* (internal citations omitted). If a defendant makes a Rule 12(b)(2) motion, the court can either hold a hearing or "instead rel[y] on pleadings and affidavits." *Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010). If a court chooses the latter approach, it "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Id.*

## II.      Discussion of the Law

In a diversity case, a federal district court can assert personal jurisdiction over a defendant to the extent allowed by the long-arm statute of the forum state and the Due Process Clause. "Because Arkansas's long-arm statute is coextensive with constitutional limits, this Court must determine only if the exercise of personal jurisdiction over [the defendant] would offend due process." *Laymance v. Shourd*, 2019 WL 2078986, at *1 (E.D. Ark. Mar. 21, 2019) (citing *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006)). Due process requires a defendant to have such minimum contacts with the forum state that the maintenance of a suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant must "reasonably anticipate being haled into court" in the forum state, and maintenance of the lawsuit there must "not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

The Supreme Court has held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court concluded that "the defendant's conduct and connection with the forum State" were such that he could "reasonably anticipate being haled into court there." 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated,' contacts." *Doshier v. Twitter, Inc*., 417 F. Supp. 3d 1171, 1176 (E.D. Ark. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed. 2d 528 (1985) (citations omitted)). "While it is true that the 'interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice' are among the 'variety of interests' that 'a court must consider,' the Supreme Court has recently reaffirmed that 'the primary concern is the burden on the defendant.'" *Carson v. Rd. Knights, Inc*., No. 4:20-CV-00519-BRW, 2020 WL 6326104, at *2 (E.D. Ark. Oct. 27, 2020) (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty*., 137 S. Ct. 1773, 1780 (2017)).

The Eighth Circuit Court of Appeals has identified five factors to determine the sufficiency of a defendant's contacts: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd*., 89 F.3d 519, 522-23 (8th Cir. 1996) (footnote omitted). The first three factors are closely related and can be considered together. *Id.* at 523. They are also the most important factors. *See*

*Burlington Indus., Inc. v. Maples Indus., Inc*., 97 F.3d 1100, 1102 (8th Cir. 1996).

Plaintiff does not contend that the Court has general jurisdiction over UP. Even where general jurisdiction is lacking, a court can have specific jurisdiction over a defendant. "Specific jurisdiction over a defendant is exercised when a state asserts personal jurisdiction over a nonresident defendant that 'has purposefully directed [its] activities at [the forum state's] residents' in a suit that 'arises out of' or 'relates to' these activities." *Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010) (quoting *Epps v. Stewart Info. Serv. Corp*., 327 F.3d 642, 646-47 (8th Cir. 2003)). "Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Id.* at 795 (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008)).

To prove specific personal jurisdiction, Plaintiff states that his injuries arose directly from his employment with UP in Arkansas. He received his work assignment from UP in Arkansas, he reported to the Little Rock station to begin his assignment, and he returned to Arkansas after his injury. Further, Plaintiff argues that the reason he boarded the UP-contracted transport van in Texarkana, Arkansas, was for the purpose of staying overnight at UP's designated motel and to obtain the mandatory rest before transporting another UP train back to Pine Bluff, Arkansas.

UP argues that this is merely a car wreck case and the wreck occurred in Texas, not Arkansas. UP is incorporated in Delaware and has its headquarters in Nebraska. UP argues that it is not "at home" in Arkansas and does not have the necessary contacts with the State to allow the Court to exercise specific personal jurisdiction over it. UP contends that the facts asserted by Plaintiff to prove jurisdiction relate to Plaintiff's relationship with Arkansas, not UP's contacts with the State. The alleged negligent conduct resulting in Plaintiff's injuries occurred in Texas.

In *BNSF Ry. Co. v. Tyrrell*, the Supreme Court considered two consolidated cases brought by BNSF employees under FELA for injuries sustained while working for the railroad. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017). The employees[1] filed their complaints in Montana state court. Neither employee alleged injuries arising from or related to work performed in Montana. Neither employee ever worked for BNSF in Montana. However, the Montana Supreme Court held that Montana courts could exercise general personal jurisdiction over the railroad pursuant to Section 56 of FELA which the court concluded authorized state courts to exercise personal jurisdiction over railroads "doing business" in the state. The state supreme court reasoned that BNSF was "doing business" in Montana and could be found within the state because of the railroad's many employees and miles of track in Montana.

The United States Supreme Court reversed. The Court found that Section 56 of FELA concerned venue and subject matter jurisdiction only. "FELA does not authorize state courts to exercise personal jurisdiction over a railroad solely on the ground that the railroad does some business in their States. …" *BNSF Ry. Co.*, 137 S. Ct. at 1558. The Court went on to find that the Montana courts did not have general or specific personal jurisdiction over BNSF. "BNSF, we repeat, is not incorporated in Montana and does not maintain its principal place of business there. Nor is BNSF so heavily engaged in activity in Montana "as to render [it] essentially at home" in that State." *Id.* at 1559. The Court explained, "In short, the business BNSF does in Montana is sufficient to subject the railroad to specific personal jurisdiction in that State on *claims related to the business it does in Montana*." *Id.* (emphasis added).

The Supreme Court recently examined specific jurisdiction, "sometimes called case-

---

[1] One of the plaintiffs brought the suit as the administrator of her husband's estate after he died from kidney cancer due to his exposure to carcinogenic chemicals while working for BNSF.

linked" jurisdiction, again in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021).

> Specific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." . . . [T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"

*Ford Motor Co.,* 141 S. Ct. at 1024-25.

In *Baker v. Union Pacific,* a railroad employee brought a personal injury suit against Union Pacific Railroad pursuant to FELA in Missouri. *Baker v. Union Pac. R.R.,* No. 2021 WL 168740, at *1 (E.D. Mo. Jan. 19, 2021). The plaintiff, a maintenance-of-way laborer for the railroad in Missouri, was "transferred emergently" to Kentucky. *Id.* The employee was injured in Kentucky while moving equipment in a motel used by Union Pacific. Union Pacific filed a motion to dismiss the complaint for lack of personal jurisdiction. The court compared its facts to those in *BNSF* and found, like the Supreme Court, that it did not have general jurisdiction over Union Pacific based upon the number of employees, the amount of revenue, or the rail system in Missouri. The court further found that it did not have specific jurisdiction over Union Pacific because the employee did not allege that he had been injured in Missouri or that any wrongful acts or negligent conduct occurred in Missouri. *Id. See also Williams v. Norfolk S. Ry. Co.,* 2020 WL 2043452 (N.D. Ohio Apr. 28, 2020) (employer-employee relationship between plaintiff and nonresident railroad corporation in forum state was not enough for specific jurisdiction where injury was sustained out of state. "[W]hat matters here is whether Williams's injury, from which this FELA claim ultimately arose, was the natural and probable consequence of NS's transacting business in Ohio) (internal quotations omitted)).

District court cases from other jurisdictions find that similar facts support specific jurisdiction. In *Hill v. Union Pacific Railroad Co.*, the court found sufficient minimum contacts between Idaho and Union Pacific to confer specific jurisdiction over plaintiffs' FELA claims. There, the plaintiffs were employees of UP in Idaho, reported to work in Idaho, received their paychecks in Idaho and UP directed their work activities in Idaho. The court reasoned that UP "created the contact with Idaho as it became the employer of several hundred individuals," including the plaintiffs. *Hill,* 362 F.Supp.3d 890, 898 (D. Idaho 2019). Further, the court found UP had received benefits and privileges from Idaho in connection with the plaintiffs' employment and, "'but for' the employment relationship with Union Pacific, Plaintiffs' injuries would not have occurred." *Id.* The Idaho court relied, in part, on an opinion by a 2016 Kansas district court, *Overfelt v. BSNF Ry. Co.*, 2016 WL 1045477 (D. Kan. Mar 15, 2016). Again, the plaintiff was an employee of the railroad in Kansas, was assigned work in Kansas, and reported to work in Kansas. He was sent to Texas for an assignment by the railroad. While there, he was thrown from a gondola car and injured. The court found that BNSF "created the contact with Kansas as it 'became an employer of an individual in the state of Kansas,'" and trained, supervised, and assigned the plaintiff work in Kansas, thus the court had specific jurisdiction over BNSF.

The facts of this case are similar to the facts in all of the cases cited above. A railroad employee working in one state is sent to another state by the railroad to perform an assignment. The employee is injured there and comes back to his home state to file suit against the railroad. The *Baker* court, following the rationale of the Supreme Court in *BNSF*, found that the employee's home state did not have general or specific personal jurisdiction over the railroad. Following the rationale of *Hill* and *Overfelt* would result in Union Pacific being subject to

specific jurisdiction in every state where they have an employee. The Eighth Circuit Court of Appeals has not yet had the opportunity to rule in a similar case. While district courts differ, the Court is persuaded that the *Baker* court's holding is in line with modern United States Supreme Court personal jurisdiction jurisprudence that appears to restrict rather than enlarge personal jurisdiction. *See* Charles W. "Rocky" Rhodes and Cassandra Burke Roberson, *A New State Registration Act: Legislating a Longer Arm for Personal Jurisdiction*, 57 HVLJL 377, 377-399 (2020) (discussing restraints on specific jurisdiction).

Plaintiff also argues that UP has accepted personal jurisdiction by appointing a registered agent in Arkansas to accept service of process on its behalf. However, the Arkansas legislature, in effect, nullified that argument by passing Arkansas Code § 4-20-115. "The appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state." Ark. Code Ann. § 4-20-115; *see also Antoon v. Securus Techs., Inc*., No. 5:17-CV-5008, 2017 WL 2124466, at *3 (W.D. Ark. May 15, 2017).

For all the reasons given, the connection between the Plaintiff's claims and UP's activities in Arkansas—or otherwise said, the relationship among the defendant, the forum, and the litigation—is not close enough to support specific jurisdiction. UP's Motion to Dismiss (ECF No. 3) is GRANTED. Neither party has asked the Court to consider a transfer of the claims against UP to another federal district court. And there has been no suggestion that the statute of limitations has run between the filing of the instant case and the date of this Order. In these circumstances, dismissal makes more sense than transfer. The Court finds the interests of justice are better served by dismissal. The Clerk is directed to close the case.

IT IS SO ORDERED this 15th day of September, 2021.

_____
James M. Moody Jr.
United States District Judge